**2024-1401**

# United States Court of Appeals for the Federal Circuit

ACADIA PHARMACEUTICALS INC.,

*Plaintiff-Appellee,*

– v. –

AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC.,

TEVA PHARMACEUTICALS USA, INC.,

*Defendants,*

MSN LABORATORIES PRIVATE LTD., MSN PHARMACEUTICALS, INC.,

*Defendants-Appellants.*

*On Appeal from the United States District Court for the
District of Delaware in No. 1:20-cv-00985-GBW,
Gregory Brian Williams, Judge*

## APPELLANTS' PETITION FOR REHEARING EN BANC

Chad A. Landmon
Chris Jones
POLSINELLI PC
1401 Eye Street, NW, Suite 800
Washington, DC 20005
Phone: (202) 626-8303
clandmon@polsinelli.com
chris.jones@polsinelli.com

Counsel for Appellants

August 8, 2025

Counsel for Appellants MSN Laboratories Private LTD. and MSN Pharmaceuticals, Inc. certifies that the following is accurate and complete to the best of the undersigned's knowledge:

1. **Represented Entities** (Fed. Cir. R. 47.4(a)(1)): The full names of all entities represented by undersigned counsel in this case:

   MSN Laboratories Private Ltd.

   MSN Pharmaceuticals, Inc.

2. **Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)): The full names of all real parties in interest for the entities (do not list the real parties if they are the same as the entities):

   N/A

3. **Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)): The full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities:

   MSN Pharmaceuticals, Inc. is a wholly owned subsidiary of MSN Laboratories Private Ltd.

4. **Legal Representatives** (Fed. Cir. R. 47.4(a)(4); Fed. Cir. R. 47.5(b)): List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

   *Seitz, Van Ogtrop & Green, P.A.*: James S. Green, Jr.

   *Upadhye Tang LLP*: Brent A. Batzer; Shashank D. Upadhye; Yixin H. Tang

5. **Related Cases** (Fed. Cir. R. 47.4(a)(5)): The case titles and numbers of any case known to be pending in this court or any other court or agency that will

directly affect or be directly affected by this court's decision in the pending appeal (do not include the originating case number(s) for this case):

N/A

6. **Organizational Victims and Bankruptcy Cases** (Fed. Cir. R. 47.4(a)(6)): The title and number or any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

N/A

Respectfully submitted,

Date: August 8, 2025

*/s/* Chad A. Landmon

Chad Landmon
Polsinelli PC
1401 Eye Street, NW, Suite 800
Washington, DC 20005
Telephone: (202) 626-8303
Email: clandmon@polsinelli.com

Counsel for Appellants

# TABLE OF CONTENTS

Certificate of Interest .................................................................................. i

Table of Contents .................................................................................... iii

Table of Authorities ................................................................................ iv

Circuit Rule 40(c)(1) Statement ............................................................. vi

Introduction ............................................................................................... 1

Statement of the Case ................................................................................ 3

      A.    The District Court's Decision ........................................................... 3

      B.    This Court's Intervening Decision in *Allergan* and the Panel's
Affirmance in this Appeal .................................................. 5

Argument .................................................................................................... 6

I.    *Allergan* Violates the Bedrock Principle of ODP: Earlier-Expiring Patents
Should Qualify as ODP References Against Later-Expiring Patents
Regardless of the Filing Dates ............................................................. 6

      A.    This Court's Precedent Established that Expiration Dates, Not Filing
or Issue Dates, are What Matters in ODP ........................... 8

      B.    *Allergan* is Improperly Anchored in Pre-URAA Case Law ............... 10

      C.    *Allergan* Improperly Grants First-Filed Patents Stronger Property
Rights than Later-Filed Patents .......................................... 12

II.    *Allergan* Allows Patentees to Obtain Duplicative Patents That Will Result in
Harassment by Different Assignees ........................................... 14

Conclusion ............................................................................................... 17

Addendum

Certificate of Compliance

**Cases**                                                                   **Page(s)**

*Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology*
    *Tr.*, 764 F.3d 1366 (Fed. Cir. 2014)......................................1, 2, 8, 9, 10

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*,
    111 F.4th 1358 (Fed. Cir. 2024) .... 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17

*Barrett v. Hall*,
    2 F. Cas. 914 (C.C.D. Mass. 1818).........................................................6

*In re Cellect*,
    81 F.4th 1216 (Fed. Cir. 2023), *cert. denied sub nom. Cellect, LLC*
    *v. Vidal*, 145 S. Ct. 153 (2024) ................................ 1, 2, 7, 8, 10, 11, 14, 15, 16

*In re Dinsmore*,
    757 F.3d 1343 (Fed. Cir. 2014) .........................................................15

*In re Fallaux*,
    564 F.3d 1313 (Fed. Cir. 2009) .........................................................14

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
    753 F.3d 1208 (Fed. Cir. 2014) ........................................1, 2, 8, 9, 11

*In re Hubbell*,
    709 F.3d 1140 (Fed. Cir. 2013) ..................................................1, 2, 14

*Immunex Corp. v. Sandoz Inc.*,
    964 F.3d 1049 (Fed. Cir. 2020) .....................................................2, 14

*In re Jentoft*,
    392 F.2d 633 (CCPA 1968) ...............................................................16

*Miller v. Eagle Mfg. Co.*,
    151 U.S. 186 (1894).............................................................................6

*Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*,
    909 F.3d 1355 (Fed. Cir. 2018) ...........................................................8

*Odiorne v. Amesbury Nail Factory*,
    18 F. Cas. 578 (C.C.D. Mass. 1819)....................................................6

*In re Robeson*,
    331 F.2d 610 (CCPA 1964) .............................................................11

*Russello v. United States*,
    464 U.S. 16 (1983) ...........................................................................14

*In re Van Ornum*,
    686 F.2d 937 (CCPA 1982) ...........................................14, 16, 17

**Statutes**

35 U.S.C. § 101 .................................................................................6, 7

35 U.S.C. § 121 ....................................................................................13

35 U.S.C. § 154(b) .............................................................................4, 9

35 U.S.C. § 156 ......................................................................................4

35 U.S.C. § 253 ....................................................................................12

**Other Authorities**

37 C.F.R. § 1.321 .......................................................................2, 12, 15

# CIRCUIT RULE 40(C)(1) STATEMENT

Based on my professional judgment, I believe this appeal requires an answer to a precedent-setting question of exceptional importance:

> Whether a first-filed, first-issued, later-expiring patent can be invalidated by a later-filed, later-issued, earlier-expiring patent for obviousness-type double patenting?

Based on my professional judgment, I believe the panel decision is contrary to the following decisions and precedents of this Court: *In re Cellect, LLC*, 81 F.4th 1216 (Fed. Cir. 2023), *cert. denied sub nom. Cellect, LLC v. Vidal*, 145 S. Ct. 153 (2024); *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049 (Fed. Cir. 2020); *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366 (Fed. Cir. 2014); *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208 (Fed. Cir. 2014); *In re Hubbell*, 709 F.3d 1140 (Fed. Cir. 2013).

Dated: August 8, 2025                    _/s/ Chad Landmon_____
                                         Chad Landmon

The doctrine of obviousness-type double patenting ("ODP") serves two primary purposes: (1) allowing the public to freely use an invention after a patent expires; and (2) "preventing harassment of an alleged infringer by multiple assignees asserting essentially the same patented invention." *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013); *see also In re Cellect, LLC*, 81 F.4th 1216, 1229 (Fed. Cir. 2023), *cert. denied sub nom. Cellect, LLC v. Vidal*, 145 S. Ct. 153 (2024); *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1214 (Fed. Cir. 2014). To ensure ODP serves those purposes, this Court's precedent was unequivocal: "[p]ermitting any earlier expiring patent to serve as a double patenting reference for a patent subject to the URAA guarantees a stable benchmark that preserves the public's right to use the invention (and its obvious variants) that are claimed in a patent when that patent expires." *Gilead*, 753 F.3d at 1216; *see also Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1374 (Fed. Cir. 2014).

The decision in *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358 (Fed. Cir. 2024), which controlled the panel's decision in this appeal, created a new rule "that 'a first-filed, first-issued, later-expiring claim cannot be invalidated by a later-filed, later-issued, earlier-expiring reference claim having a common priority date.'" Op. 2 (quoting *Allergan*, 111 F.4th at 1369).[1] That new rule, however,

---

[1] *See* Addendum.

directly conflicts with this Court's precedent, which repeatedly recognizes that earlier-expiring patents qualify as ODP references against later-expiring patents. *In re Cellect*, 81 F.4th at 1229; *Abbvie*, 764 F.3d at 1374; *Gilead*, 753 F.3d at 1216. Put simply, the panel decision here and in *Allergan* violates the "bedrock principle" of ODP—the public will no longer be free to use inventions claimed in expired patents if the same invention is claimed in a first-filed, first-issued, later-expiring patent. *Gilead*, 753 F.3d at 1214.

The panel decision here and in *Allergan* did not even consider the second purpose of ODP: to prevent "harassment . . . by multiple assignees asserting essentially the same patented invention." *In re Hubbell*, 709 F.3d at 1145; *see also Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020). Yet, *Allergan* opens the door to the very type of harassment ODP is supposed to prevent. When multiple patents claim obvious variations of the same invention, but have different expiration dates, patentees have traditionally filed terminal disclaimers to obviate ODP issues. Terminal disclaimers must "[i]nclude a provision that any patent granted on that application . . . shall be enforceable only for and during such period that said patent is *commonly owned* with the" ODP reference patent. 37 C.F.R. § 1.321(c)(3).

Under *Allergan's* new rule, however, patentees have no reason to file terminal disclaimers to overcome ODP issues in situations where the first-filed patent expires

later because it is now immune to ODP. The ripple effect of that rule is that patentees are free to assign one or more of those patents, which can result in multiple infringement suits over the same invention. *Allergan* thus not only prevents the public from practicing obvious variants of an invention when a patent expires but also turns patents into transferrable weapons that can be used to harass competitors, which is not only bad policy but is antithetical to one of the core purposes of ODP.

The Court should grant en banc rehearing to overturn the new rule announced in *Allergan* and applied by the panel in this appeal.

## STATEMENT OF THE CASE

### A.    The District Court's Decision

MSN submitted an Abbreviated New Drug Application ("ANDA") seeking FDA approval to market a generic version of Nuplazid® (pimavanserin). Appx1. Acadia, the Nuplazid® NDA owner, filed a complaint against MSN in the District of Delaware, alleging that MSN's ANDA infringes claim 26 of U.S. Patent No. 7,601,740 ("the '740 patent"). *Id.* The '740 patent was filed as U.S. Patent Application No. 10/759,561 ("the '561 application") on January 15, 2004, and issued on October 13, 2009. Appx66-67. While the '740 patent would have expired on January 15, 2024 (i.e., 20-years from the filing of the '561 application), it received

a 980-day patent term adjustment ("PTA") under 35 U.S.C. § 154(b) and expires well-after its 20-year statutory term.[2] *Id*.

Acadia also owns U.S. Patent No. 9,566,271 ("the '271 patent"), which is related to the '740 patent. Appx65-67. The '271 patent was filed on November 6, 2015, claims priority to the '561 application, and thus has the same effective filing date as the '740 patent (i.e., January 15, 2004). *Id*. Unlike the '740 patent, the '271 patent did not receive any term-extensions, and expired on January 15, 2024, as illustrated in the following timeline:



Exhibit A
Timeline of Relevant Prosecution Events

Appx3, Appx65-67.

Recognizing that claim 26 of the '740 patent is an obvious variation of claim 5 of the '271 patent, MSN moved for summary judgment of invalidity. Appx52. The

---

[2] The '740 patent also received a patent term extension under 35 U.S.C. § 156, which is not in dispute. Appx519.

parties stipulated that the dispute boiled down to whether the '271 patent qualifies as an ODP reference against the '740 patent. Appx56-62.

On December 13, 2023, the District Court denied MSN's motion. Appx16. The court agreed with Acadia, and held that because the '740 patent was earlier-filed, "the '271 patent does not qualify as a proper [ODP] reference against the '740 patent." Appx13-15. The District Court's decision, like the panel's decision in *Allergan*, was inconsistent with this Court's precedent and the underlying purposes that ODP serves.

**B. This Court's Intervening Decision in *Allergan* and the Panel's Affirmance in this Appeal**

MSN appealed the District Court's decision, and this appeal was fully briefed on June 20, 2024. This Court then issued its decision in *Allergan* on August 13, 2024, finding that "a first-filed, first-issued parent patent having duly received PTA can[not] be invalidated by a later-filed, later-issued child patent." *Allergan*, 111 F.4th at 1371. The appellee in *Allergan* petitioned for panel rehearing and en banc rehearing, supported by amici curiae, and this Court invited a response from appellants. Combined Petition for Panel Rehearing and Rehearing En Banc, *Allergan*, 111 F.4th 1358 (No. 24-1061); Response to Defendant-Appellee's Petition for Rehearing or Rehearing En Banc, *Allergan*, 111 F.4th 1358 (No. 24-1061). But appellee withdrew its petition before the Court could grant or deny the petition.

Recognizing that *Allergan* "entirely controlled" the issues in this appeal and that MSN's "only recourse is en banc action," the panel issued an opinion on June 9, 2025, affirming the District Court's judgment. Op. 2.

ARGUMENT

I. ***ALLERGAN* VIOLATES THE BEDROCK PRINCIPLE OF ODP: EARLIER-EXPIRING PATENTS SHOULD QUALIFY AS ODP REFERENCES AGAINST LATER-EXPIRING PATENTS REGARDLESS OF THE FILING DATES**

Over 200 years ago, Justice Story recognized a flaw in our patent system: allowing patentees to have multiple patents on the same invention with different expiration dates "would completely destroy the whole consideration derived by the public for the grant of the patent." *Odiorne v. Amesbury Nail Factory*, 18 F. Cas. 578, 579 (C.C.D. Mass. 1819); *see also Barrett v. Hall*, 2 F. Cas. 914, 924 (C.C.D. Mass. 1818). The Supreme Court later adopted Justice Story's early observation, and the doctrine of ODP was born to protect the public's right to use a patented invention when the patent expires. *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 198 (1894). That precedent has stood the test of time and remains true today—at its core, ODP is a simple doctrine: patentees are entitled to one patent per invention, and when that patent expires, the invention should enter the public domain.

Indeed, the *Allergan* panel explained that ODP "stems from 35 U.S.C. § 101, which provides that an inventor may obtain 'a patent' (*i.e.*, a single patent) for an invention" and that "[t]he doctrine's primary goal is to prevent an unjustified

timewise extension of patent exclusivity beyond the life of a patent." *Allergan*, 111 F.4th at 1366-67 (quoting 35 U.S.C. § 101). While *Allergan* recognizes ODP's history and purpose on its face, the decision contradicts binding precedent and undermines the foundational purpose of ODP. *Allergan* expressly allows patentees to prevent the public from using obvious variations of inventions claimed in later-filed, *expired* patents when the first-filed patent in the family is kept alive longer via PTA. And, *Allergan* opens the door to fragmented patent ownership, which will lead to the very type of harassment ODP is supposed to prevent, reducing competition and further burdening the healthcare system with increased drug costs. As this Court saw in *Allergan* and *Cellect*, MSN's position on these ODP and policy issues is supported by amici curiae, underscoring that the Court should grant MSN's petition to rehear this issue en banc. Brief for the Association for Accessible Medicines as Amicus Curiae in Support of Appellee's Petition for Rehearing En Banc, *Allergan*, 111 F.4th 1358 (No. 24-1061); Brief of Amici Curiae Alvogen PB Research & Development LLC, et al., in Support of Appellee's Petition for Rehearing En Banc, *Allergan*, 111 F.4th 1358 (No. 24-1061); Brief of Amicus Curiae Inari Agriculture, Inc. in Support of Director's Opposition to Rehearing En Banc, *In re Cellect*, 81 F.4th 1229; Brief for the Association for Accessible Medicines as Amicus Curiae in Support, *In re Cellect*, 81 F.4th 1229; Brief of Amici Curiae Samsung Electronics Co., Ltd., et al., in Support of the Director of the USPTO, *In re Cellect*, 81 F.4th

1229; Brief of Amicus Curiae Alvogen PB Research & Development LLC in Support of the Director and Affirmance, *In re Cellect*, 81 F.4th 1229.

### A. This Court's Precedent Established that Expiration Dates, Not Filing or Issue Dates, are What Matters in ODP

This Court has held on several occasions that later-filed but earlier-expiring patents can serve as ODP references against earlier-filed but later-expiring patents. *Gilead* held that using expiration dates in ODP "guarantees a stable benchmark that preserves the public's right to use the invention (and its obvious variants)" when the patent expires. *Gilead*, 753 F.3d at 1216. *Abbvie* made "explicit what was implicit in Gilead: the doctrine of obviousness-type double patenting continues to apply where two patents that claim the same invention have different expiration dates." *Abbvie*, 764 F.3d at 1374. And in *Breckenridge*, this Court explained "that the expiration date is the benchmark of obviousness-type double patenting." *Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1358 (Fed. Cir. 2018). Finally, *Cellect* held that ODP looks at "whether the claims of a later-expiring patent would have been obvious over the claims of an earlier-expiring patent," including "after PTA has been added." *In re Cellect,* 81 F.4th at 1226, 1229.

There is no ambiguity in the Court's precedent—if two related patents have different expiration dates, the *earlier-expiring* patent qualifies as an ODP reference against the *later-expiring* patent. But in *Allergan*, the panel contorted these clear precedents to create its new rule immunizing first-filed patents from ODP

8

challenges. "[G]uided by the parties' arguments," the *Allergan* panel stated that *Gilead* "did not address the role of filing dates." *Allergan*, 111 F.4th at 1368. But, the parties in *Gilead* briefed the issue of filing, issue, *and* expiration dates, and the majority chose *expiration* dates as the stable benchmark to use in ODP analyses. *Gilead*, 753 F.3d at 1218 (Judge Rader dissenting, "[a]ccording to the court, the expiration dates of the patents govern the inquiry irrespective of filing or issue dates").

The *Allergan* panel also dismissed *Abbvie* because "the asserted claims were filed later, claimed a later priority date, issued later, and expired later than the patentably indistinct reference claims." *Allergan*, 111 F.4th at 1371. But this ignores that *Abbvie* made "explicit what was implicit" in *Gilead*. *Abbvie*, 764 F.3d at 1374. And *Abbvie* even contemplated the scenario playing out here and in *Allergan* when it explained that "[p]atents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO," which lead to PTA. *Id*. at 1373 (citing 35 U.S.C. § 154(b)). In other words, *Abbvie* considered situations where first-filed patents expire after later-filed patents because of PTA, and stated that, "[w]hen such situations arise, the doctrine of obviousness-type double patenting ensures that *a particular invention (and obvious variants thereof) does not receive an undue patent term extension.*" *Id*. (emphasis

added). *Abbvie* is clear: when two patents claim the same *invention*, ODP ensures that neither patent expires later because of PTA, regardless of filing dates.

*Allergan* also characterized *Cellect* as resolving a "different question than that at issue here." *Allergan*, 111 F.4th at 1368, 1370. But *Cellect* reaffirmed that ODP is concerned with expiration dates, inclusive of PTA. *In re Cellect*, 81 F.4th 1228. Further, the panels in *Allergan* and *Cellect* both considered Congress's intent when the PTA statute was designed. *Cellect* was clear: "There is nothing in the PTA statute to suggest that application of ODP to the PTA-extended patent term would be contrary to the congressional design." *Id*. at 1227. Despite that clear and logical explanation, the *Allergan* panel reneged on this Court's interpretation of ODP and PTA, and instead stated the opposite—that a first-filed, PTA-extended patent being invalidated for ODP would "abrogate the benefit Congress intended to bestow on patentees when codifying PTA." *Allergan*, 111 F.4th at 1371.

*Allergan*'s reasoning and the decision of the panel here are therefore inconsistent with earlier precedent, and the Court should correct these issues en banc.

## B.    *Allergan* **is Improperly Anchored in Pre-URAA Case Law**

In *Allergan*, the panel explained that, before the URAA was enacted in 1995, "issuance dates and expiration dates were inextricably intertwined," and "courts traditionally looked to the issuance dates of commonly-owned, patentably-indistinct patents to determine whether ODP applied." *Allergan*, 111 F.4th at 1367. Since the

URAA was passed, "[i]nstead of measuring from issuance date, a patent's term is now measured from its effective filing, or priority, date." *Id*. But after Congress codified PTA, "two commonly-owned patents that would otherwise expire on the same day due to a shared priority date may nevertheless have different expiration dates due to an award of PTA." *Id*. at 1368.

Despite recognizing these foundational changes to how patent terms are calculated, the *Allergan* panel held that "the only conclusion consistent with the purpose of the ODP doctrine . . . is to prevent patentees from obtaining a *second* patent on a patentably indistinct invention to effectively extend the life of a *first* patent to that subject matter." *Id*. at 1369. That holding, however, applies pre-URAA logic, where it was not possible for a *first* patent to expire *after* a *second* patent. Moreover, *Gilead* contemplated that same issue and held that "[l]ooking instead to the earliest expiration date of all the patents an inventor has on his invention and its obvious variants best fits and serves the purpose of the doctrine of double patenting." *Gilead*, 753 F.3d at 1216; *see also In re Cellect*, 81 F.4th at 1227.

If anything, *Allergan* encourages patentees to play games at the patent office with first-filed applications—intentionally prolonging prosecution to create delays by the patent office that maximize PTA and extend the first-filed patent's term. That's bad policy, and runs afoul of one of ODP's purposes. *In re Robeson*, 331 F.2d 610, 615 (CCPA 1964) (ODP should prevent "inconvenience to the Patent Office").

By relying on outdated precedent while simultaneously conceding that ODP must now be assessed based on expiration dates inclusive of PTA, *Allergan* undermines the very legal clarity it purports to preserve, conflicts with this Court's precedent, and disrupts the settled expectations that ODP is based on expiration dates.

### C. *Allergan* Improperly Grants First-Filed Patents Stronger Property Rights than Later-Filed Patents

The *Allergan* panel also speculated, without support, that patent applicants "first seek to protect the most valuable inventive asset . . . before filing continuing applications on enhancements or modifications to that inventive asset . . . ." *Allergan*, 111 F.4th at 1371. Thus, *Allergan* declares that first-filed patents are "super patents" that are more valuable and have stronger property rights than non-first filed patents. There is no support for such a remarkable holding in the case law or our patent laws.

*First*, patentees are free to file terminal disclaimers at the USPTO to obviate ODP issues after a patent has issued. 35 U.S.C. § 253; 37 C.F.R. § 1.321. If first-filed patents were intended to be automatically and completely immunized from ODP challenges, as the panel held in *Allergan*, there would be no need for such a mechanism. But that mechanism exists for a reason: if patentees *choose* to get a second patent on patentably indistinct subject matter, they are free to disclaim any PTA awarded to the first patent so that both patents have the same expiration date and are not subject to ODP. The very existence of a post-issuance terminal

disclaimer mechanism reflects Congress's recognition that first-filed patents are not categorically shielded from ODP.

*Second*, the safe harbor provisions of Section 121 were specifically designed to ensure that patentees can obtain multiple patents on related, but distinct, inventions. Specifically, divisional applications filed as a result of a restriction requirement during prosecution of the original application are not available as ODP references. 35 U.S.C. § 121. Thus, Congress expressed its intent clearly by identifying specific types of applications that cannot be used for ODP. But *Allergan* expands this statutory provision beyond what Congress authorized, holding that later-filed patents, regardless of what type of application they issue from, *never* qualify as ODP references against first-filed patents.

In fact, that is *exactly* what happened in this appeal. The District Court ruled on, and the parties fully briefed on appeal, whether the '271 patent meets the safe harbor requirements of Section 121 such that it should be disqualified as an ODP reference against the '740 patent. Op. 2, n. 1. But because the panel's new rule in *Allergan* overrides Congress and renders Section 121 superfluous in situations like these, the panel here did "not reach the district court's alternative ground for rejecting ODP—that the safe harbor provision of 35 U.S.C. § 121 protects the '740 patent against the '271 patent." *Id*. The panel decisions in this appeal and in

*Allergan* far exceeds what Congress intended. *Russello v. United States*, 464 U.S. 16, 23 (1983).

Thus, *Allergan* also misinterprets, and rewrites, the patent laws to create a new class of patents with stronger property rights than Congress has authorized.

## II.   *ALLERGAN* ALLOWS PATENTEES TO OBTAIN DUPLICATIVE PATENTS THAT WILL RESULT IN HARASSMENT BY DIFFERENT ASSIGNEES

The panel decisions here and in *Allergan* conflict with this Court's long-held recognition that ODP serves to prevent harassment where "multiple infringement suits" are filed "by different assignees asserting essentially the same patented invention." *In re Hubbell*, 709 F.3d 1140 at 1145; *see also In re Cellect*, 81 F.4th at 1229; *Immunex*, 964 F.3d at 1056; *In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009); *In re Van Ornum*, 686 F.2d 937, 944 (CCPA 1982). That issue, however, was never raised for the *Allergan* panel's consideration, and thus was not addressed. But *Allergan's* holding allows for fragmented ownership of the same invention, potentially leading to separate enforcement of the same invention by different assignees—the kind of harassment ODP should prevent.

Specifically, under the decision by the panel here and in *Allergan*, patentees can now assign duplicative patents away, potentially subjecting one accused infringer to lawsuits over the *same* patent or invention by *different* assignees. Terminal disclaimers are supposed to prevent this from happening because they "must '[i]nclude a provision that any patent granted on that application . . . shall be

enforceable only for and during such period that said patent is commonly owned with the . . . patent which formed the basis' for the rejection." *In re Dinsmore*, 757 F.3d 1343, 1347 (Fed. Cir. 2014) (quoting 37 C.F.R. § 1.321(c)). Without terminal disclaimers, patentees can assign *any* of the patents in the family without repercussion.

But under *Allergan*, the threshold reason for filing a terminal disclaimer—to ensure that duplicative patents have the same expiration date, thereby obviating ODP—is nullified. A patentee has no reason to file a terminal disclaimer for first-filed *or* later-filed patents to overcome ODP when the first-filed patent in the family has PTA. The first-filed, latest-expiring patent cannot be invalidated for ODP at all, and the later-filed patents expire *earlier* and thus would not be susceptible to ODP either. *Allergan*, 111 F.4th at 1371. And if terminal disclaimers are unnecessary, patentees can assign those patents away.

That is *exactly* what this Court saw in *Cellect*—the patentee "obtained a number of interrelated patents to admittedly patentably indistinct subject matter which each claimed priority from a single application," but "none of the asserted patents was subject to a terminal disclaimer." *Id.* at 1368 (discussing *Cellect*). *Cellect* correctly held that those patents were invalid for ODP based on their respective *expiration* dates, giving patentees a strong incentive to file terminal disclaimers when they obtain duplicative patents with different expiration dates,

ensuring that ODP still prevents harassment. *In re Cellect*, 81 F.4th at 1230. But *Allergan's* new rule did the opposite—patentees are now free to sell their patents, and the buyers may then sue the same accused infringer over the same invention. In situations where the first-filed patent is granted PTA, which often happens in the pharmaceutical field, duplicative patents can serve as pawns on the litigation chessboard—a problem that commentators and amici curiae agree has plagued pharmaceutical patent litigation for years.[3] *Supra* Section 1. This serial litigation over the same invention is not only contrary to the purpose of ODP but will drive up costs across all industries, particularly within the patent-heavy pharmaceutical industry, where costs of drug products are already a burden to the healthcare system. *Id*.

It seems that history is repeating itself because this Court's predecessor, the CCPA, previously discounted this "harassment possibility" and later had to correct itself. *In re Van Ornum*, 686 F.2d at 948. In *In re Jentoft*, the CCPA held that a terminal disclaimer without a "common ownership" requirement could still obviate ODP because "harassment by multiple suits is most unlikely," even calling the "harassment theory" an "unreality." *In re Jentoft*, 392 F.2d 633, 641 (CCPA 1968). But the CCPA was later faced with the "reality" that *Jentoft* was wrong, and held

---

[3] Sarfaraz K. Niazi, *Contradicting rulings of the US patent office on double patenting jeopardize the generic and biosimilar drugs*, PHARM. PAT. ANALYST, Jan. 2025 at 1.

that terminal disclaimers should require "common ownership" to prevent harassment in the context of ODP. *In re Van Ornum*, 686 F.2d at 947-948.

For this additional reason, *Allergan* destroys one of the pillars of ODP—it allows for nefarious gamesmanship and harassment in the form of multiple infringement lawsuits from different entities over essentially the same invention. This Court should consider these issues en banc and overturn the panel decisions here and in *Allergan* to restore consistency with long-standing ODP principles—that the expiration date, not the filing date, should be used for ODP, which restores the need to file terminal disclaimers and prevents the threat of harassment.

## CONCLUSION

MSN respectfully requests that this Court grant rehearing en banc.

Dated: August 8, 2025

Respectfully submitted,

*/s/* Chad A. Landmon
Chad A. Landmon

*Attorneys for Defendants-Appellants*
*MSN Laboratories Private LTD. and MSN Pharmaceuticals, Inc*

# ADDENDUM

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**ACADIA PHARMACEUTICALS INC.,**
*Plaintiff-Appellee*

**v.**

**AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., TEVA PHARMACEUTICALS USA, INC.,**
*Defendants*

**MSN LABORATORIES PRIVATE LTD., MSN PHARMACEUTICALS, INC.,**
*Defendants-Appellants*

———————————

2024-1401

———————————

Appeal from the United States District Court for the District of Delaware in Nos. 1:20-cv-00985-GBW, 1:20-cv-01029-GBW, Judge Gregory Brian Williams.

———————————

Decided: June 9, 2025

———————————

CHAD PETERMAN, Paul Hastings LLP, New York, NY, for plaintiff-appellee. Also represented by PETER E. CONWAY, SCOTT FREDERICK PEACHMAN, BRUCE M. WEXLER; FELIX EYZAGUIRRE, Houston, TX.

2   ACADIA PHARMACEUTICALS INC. v. AUROBINDO PHARMA LTD.

CHAD A. LANDMON, Polsinelli PC, Washington, DC, for defendants-appellants.  Also represented by CHRISTOPHER JONES; THOMAS K. HEDEMANN, Axinn, Veltrop & Harkrider LLP, Hartford, CT.

———————————

Before MOORE, *Chief Judge*, LOURIE and BRYSON, *Circuit Judges*.

MOORE, *Chief Judge*.

MSN Laboratories Private Ltd. and MSN Pharmaceuticals, Inc. (collectively, MSN) appeal an order from the United States District Court for the District of Delaware granting summary judgment of no invalidity because it held claim 5 of U.S. Patent No. 9,566,271 cannot be an obviousness-type double patenting (ODP) reference for claim 26 of U.S. Patent No. 7,601,740.  Both parties agree this case is entirely controlled by our recent decision in *Allergan USA, Inc. v. MSN Laboratories Private Ltd.*, 111 F.4th 1358 (Fed. Cir. 2024), which issued after briefing in this case was completed.  Citation of Suppl. Authority at 1–2 (Feb. 24, 2025), ECF No. 27 (MSN 28(j) Ltr.); Resp. to Citation of Suppl. Authority at 1 (Mar. 3, 2025), ECF No. 28.  MSN recognizes its only recourse is en banc action.  MSN 28(j) Ltr. at 1.  We apply *Allergan*'s holding that "a first-filed, first-issued, later-expiring claim cannot be invalidated by a later-filed, later-issued, earlier-expiring reference claim having a common priority date," 111 F.4th at 1369, and conclude claim 5 of the '271 patent is not a proper ODP reference that can be used to invalidate claim 26 of the '740 patent.[1]

## AFFIRMED

———————————

[1]   We do not reach the district court's alternative ground for rejecting ODP—that the safe harbor provision of 35 U.S.C. § 121 protects the '740 patent against the '271 patent.  J.A. 6–12; MSN Br. 20–38; Acadia Br. 30–64.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Circuit Rule 40(b)(2)(I), I certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A), excluding the portions exempted under Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2). The petition contains 3,865 words.

The petition complies with the type-face and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and 32(c)(2) because it has been prepared in a proportionally spaced typeface font using Microsoft Word in 14-point Times New Roman font.

Dated: August 8, 2025          */s/* Chad Landmon_____

                              Chad Landmon